Mr. Chief Justice Si-iapjcey
delivered the opinion of the court.
Holland, the defendant in error, had obtained a judgment against Yelverton T. Newsom, and had his execution levied on three negroes, found in possession of the defendant in execution. The negroes were claimed by Sarah Newsom, who gave bond to try the right of property. An issue was made, but previous to the trial, Sarah Newsom died, and Falconer became the administrator, and had the suit revived. At the trial, the jury found a verdict in favor of Holland, the plaintiff in execution; and they also found that Mrs. Newsom’s claim was fraudulent. A motion was made for a new trial, which was overruled, and thereupon a bill of exceptions was taken, which sets but the evidence and the charges which were given by the court.
The single question is, did the evidence establish a gift from Mrs. Newsom to her son, of the negroes in question; or were they merely loaned to him, she still retaining the right of property. The correctness of the charges given by the court is not questioned. It is one of those cases in which we are called on to supervise the finding of the jury on the weight of the evidence only.
The plaintiff in execution proved that Yelverton T. Newsom was in possession of the negroes in this state, from the latter part of 1838, or the beginning of 1839, up to the time of the levy, in April, 1841. The will of Mrs. Newsom was introduced, by which she disposed of other negroes, but not of these.
The claimant proved by George G. Skipwith the ownership of the negroes by Mrs. Newsom, but he knew nothing of the particular terms on which they were delivered to her son. He had previously heard her say that she intended to give Y. T. Newsom the use of some negroes; they were delivered to him in 1837, in Tennessee, where the mother lived and died; the son also lived there until 1838 or 9, when he removed to Mississippi. Wilson C. Newsom testified that he had the management of his mother’s negroes, they being on a plantation in Mississippi, except her house servants. By her direction he delivered the negroes in question to his brother, who took them from the plantation to Tennessee, which he believed was in *697 1837 or 8. His mother had never given any of her children anything during her life. On one occasion she sent a negro girl to one of her sons in Alabama, but not as a gift. Her other children were in easy circumstances, but Y. T. Newsom had nothing, and was in debt when he received the negroes. Two other negroes were delivered wit$ these, which were sold by Y. T. Newsom, by direction of his mother, to pay debts for which she was liable as surety.
Y. T. Newsom was introduced, and testified that he had the negroes still in his possession, hut did not consider them his own. He supposed they belonged to the daughter of George G. Skipwith, under his mother’s will. There was no understanding that he should retain possession if this suit was decided in favor of the claimant, but supposed that would depend on a subsequent arrangement to he made with Skipwith. The witness also testified that there was no positive arrangement between him and his mother at the time he received the negroes, as to their being a loan or a gift; nothing was then said on that subject, hut she had told him before that time, that she intended to let him have some negroes to assist him, but that he was to have no title to them, and had never received any. He also stated that he had received three other negroes at the same time, and by his mother’s direction had sold two of them, as already stated, to pay a debt for which she was liable, and by her direction he had sent the other to one of his brothers in Tennessee. He received the negroes in 1836, and had never given a note for the hire, nor had he paid anything, or ever been called on to pay. He had an instrument signed by his mother put on record in this state, in order that her property might not be taken for his debts, and this was the only writing between them in regard to the negroes.
This was the substance of all the evidence. To make a portion of it more intelligible, it is necessary to state that the will contained a residuary clause in favor of the children of Skip-with, under which it is contended these negroes passed.
It is admitted, that the proof of possession by Y- T. Newsom *698 for so long a period in this state, made out a prima facie case in favor of the plantiff in execution ; but this, it is said, was explained and rebutted by proof showing the character of the possession and the ownership of Mrs. Newsom, by which the onus was again thrown back upon the plaintiff in execution, and that it then became necessary for him to prove the gift, or that title had been acquired by lapse of timé. This position is not altogether supported by the state of the case.
As a general rule, the delivery of negroes or other chattel by a parent to a child on marriage, or even after marriage, will constitute in law a gift, or an advancement in consideration of marriage. Permitting a negro to go home with a child after marriage, amounts to the same thing. The law presumes that, in consideration of the relationship, a gift was intended. This principle is asserted in many adjudged cases, in some of which the circumstances tended strongly to prove that a loan only was intended. Johnson and Henderson v. Dilliard, 1 Bay’s Rep. 232; Avarmt and Wife v. Sweet, 2 Bay’s R. 528; Moore, Adm’r. v. Dawney, Adm’r. 3 Hen. & Mun. R. 127; Torrence v. Graham, 1 Dev. & Battle, 284. The necessary consequence is, that, as by placing the negroes in possession of her son, the law presumes that Mrs. Newsom intended a gift, it is incumbent on her, or those claiming under her, to negative this legal presumption by showing that a loan only was intended; it was not incumbent on the plaintiff in execution to show that a gift was intended. The prima facie case arising from mere possession is strengthened when it is shown that possession was acquired by the voluntary act of the mother. The question, then, is narrowed down to this: Has the claimant shown that his intestate only intended to make a loan of the negroes to her son ? It is certain that there is no positive proof about a loan ; the mother never said she intended to loan the negroes. The only circumstances from which a loan could be inferred are these: — Skip-with stated that he had heard Mrs. Newsom say she intended to give her son the use of some negroes, but he does not state when this declaration was made. He states, also, that he does pot know with what understanding these negroes were deliv *699 ered. Wilson 0. Newsom states an additional circumstance, which may be considered entitled to some weight in remotely establishing the nature of the transaction, which is, that his mother never gave any of her children property in her lifetime. But a counteracting circumstance is also stated by the witness, which is, that all the other children were in easy circumstances. This witness had the negroes in possession and the management of his mother’s affairs, and made the delivery to his brother, but still he says nothing of the loan. The defendant in execution stated that his mother, previous to the delivery, but how long he does not say, had told him that she intended to let him have the use of some negroes to assist him, but nothing was said on this subject when he received the slaves. He also states that he had never considered them as his own. These are circumstances conducing, it is true, to show but a qualified right in the possessor, but there are counteracting circumstances of a very strong character, which should not be overlooked. Y. T. Newsom received the negroes in 1837, in Mississippi, and took them to Tennessee. He continued to reside there until 1839, as did also his mother up to the time of her death, in 1841 or 2. / In 1839, he removed with the slaves to Mississippi, without any objection being made, and continued in possession of them until 1841, without paying hire, or any agreement to pay hire. He had received them without any promise to redeliver, and without any agreement or limitation as to the length of time he should hold them. In addition to all this, the old lady, in making her will, was silent as to this property, although we must presume she intended to dispose of everything. The circumstance of her directing him to sell two of the negroes to pay a debt for which she was liable, tends strongly to show that she intended the payment to be made by him. Altogether, the circumstances which favor the idea of a loan are fully balanced by others which oppose it. The legal presumption of a gift is not satisfactorily rebutted by the claimant. This case falls far short of the case of Fitzhugh v. Anderson and others, 2 Henning & Munf. 289, in which a similar disposition of slaves was held to be a gift, notwithstanding the repeated public declarations of *700 the father, made for the express purpose of admonishing the community that a loan only was intended. The opinion of the chancellor in that case, which was affirmed by the appellate court, is couched in language forcible and appropriate. He said, “ that a father putting his son in possession of slaves, and suffering him so long to retain it, and so to convert to his own use their labor and services, that the son thereby had gained a delusive credit, ought to be deemed to have given the slaves to his son, in a controversy between the father or volunteer claimants under him, and purchasers or creditors of the son, unless his possession had been by some written act, registered in a reasonable time, and in a proper office, shown to have been fiduciary, or no more than usufructuary, by some written publication in solemn form, premonishing people with whom the son should deal that he was, although the visible, not the real owner.” ■
The witness, Y. T. Newsom, says that he had an instrument signed by his mother, put on record here, in order that her property might not be taken to pay claims against him. What this instrument was, or what would have been its legal effect, we cannot know. No offer-was made to introduce it, which is a suspicious circumstance. It has been held that subsequent declarations of the donor were inadmissible to change the character of the transaction from a gift to a loan. This may have been something of that sort, but still it is somewhat strange that no offer was made to introduce it.
The statute of frauds provides that, where a loan of goods shall be pretended to have been made to any person with whom possession shall have remained for three years, without demand made and pursued by course of law, the same shall be taken as fraudulent as against creditors and purchasers of the person in possession. Newsom was not three years in this state before the levy, and not within the strict provision of the statute, but the existence of such a statute is an indication that the policy of the law abhors this equivocal possession, which may be converted into a gift or a loan, as may best suit the purposes of the parties. Where a loan is really intended, it is an easy matter to *701 place it beyond doubt, by some instrument of writing made when possession is given, and the absence of such instrument leaves the presumptions of law to operate with all their force.
We should not omit to remark, that the parties were both domiciled in Tennessee, at the time the possession of the ne-groes was given, although the negroes were taken from a plantation in Mississippi to Tennessee. In Tennessee no gift of slaves is valid, unless it be in writing; and parol gifts pass no title, although accompanied by possession. Nuly v. Wood, 10 Yerger, 486. If it be even true, then, that no right could have been thus acquired in that state, still the question arises, was it not a gift in law for Mrs. Newsom to permit her son to bring the negroes into this state, and here to retain possession, without anything explanatory of the character of that possession ? Such must be the effect, under the circumstances of this case. This, too, was a question which was probably duly weighed by the jury, inasmuch as the court charged that such gifts were void in Tennessee, and no objection was made to the charge.
It is true that, according to our statute, we may review the evidence, and determine on the correctness of the verdict, when the refusal to grant a new trial is assigned as error; but on questions so peculiarly proper for the consideration of a jury, the verdict should not be disturbed, unless on a decided preponderance in the evidence. This is not a case of that description. The weight of evidence, indeed, seems to be on the side of the verdict.
The case of Mosely v. Williams has been cited, the facts of which are not very fully reported, yet in some of its features it resembles the present case. The principles we have asserted were there admitted, but the opinion of the court was based upon a clear case of loan fully made out. Williams had not permitted the negroes to be removed to a distance, but came to this state with his son-in-law, and the weight of evidence, direct and circumstantial, was in favor of a loan.
The judgment must be affirmed.
Clayton, J., having been counsel in the court below, gave no opinion.